FRANK J. BAUMERT and Others, Respondents, v. MANFRED
    MALKIN, Conducting Business under the Trade Name and
    Style of " THE MALKIN MUSIC SCHOOL," and HATTIE R.
    VAN SANTVOORD, Appellants.

First Department, December 19, 1919.

**Real property — restrictive covenant construed — provisions that
buildings be erected for use of one family only — subsequent use
of building for music school — suit for injunction.**

A restrictive covenant relating to lands conveyed to various grantees which
    provided that the lands shall be " restricted so that the first buildings to
    be erected on said block shall be first-class private dwellings designed for
    the use of one family only " is a covenant for construction only and is ful-
    filled when a building of that character is actually erected upon the lands.
    Hence, where one of the owners leases the building so erected to a person
    who uses the same to conduct a school of music, there is no violation of
    the covenant which will support a suit for an injunction brought by other
    grantees.
CLARKE, P. J., dissented, with memorandum.

APPEAL by the defendants, Manfred Malkin and another,
from an interlocutory judgment of the Supreme Court in
favor of the plaintiffs, entered in the office of the clerk of the
county of New York on the 3d day of July, 1919, overruling
the demurrers to the complaint, with leave to defendants to
withdraw the demurrers and to serve answers.

*Taylor More,* for the appellants.

*Charles Adkins Baker* of counsel [*Herman Aaron* with him
on the brief; *Parker & Aaron,* attorneys], for the respondents.

DOWLING, J.:

The complaint herein sets forth that on May 2, 1887,
Walter F. Kilpatrick was the owner in fee of the block bounded
by One Hundred and Twenty-first street and One Hundred
and Twenty-second street, Sixth (now Lenox) and Mount
Morris avenues, in the city of New York, and being about to
convey the street lots in said block to William A. Martin,
Anthony Smyth, Samuel O. Wright and Frederick Aldhous,

an undivided one-half interest in the avenue lots to Henry Morgenthau, said Kilpatrick and Morgenthau as parties of the first part, entered into an agreement with Martin, Smyth, Wright and Aldhous as parties of the second part, referring to said block of land as follows:

" WHEREAS it is the intention of all the parties hereto that the entire block is to be restricted so that the first buildings to be erected on said block shall be first-class private dwellings designed for the use of one family only, and

" WHEREAS, said restriction has been inserted in the deeds to said parties of the second part, and

" WHEREAS, it is agreed that said restriction shall be reciprocal with the qualifications hereinafter stated,

" *Now, therefore,* this agreement

" *Witnesseth*

" That for and in consideration of the sum of One Dollar exchanged between the parties hereto and the above consideration, it is agreed by and between the parties hereto that that portion of the block still owned by said parties of the first part shall be and hereby is restricted so that the buildings to be erected thereon shall be first-class private dwellings designed for the use of one family only or a first-class church or churches,

" And the said parties of the second part hereby agree that they will commence the improvement of the lots severally bought by them within six months from the date hereof and continue the same with due diligence to completion.

" This agreement is to be held binding upon the heirs and assigns of the respective parties hereto."

Said agreement was duly signed, sealed, acknowledged and delivered on May 2, 1887, and was recorded in the office of the register of the county of New York on August 8, 1889.

On or about May 2, 1887, Kilpatrick and his wife conveyed to William A. Martin certain premises of which the premises now known as No. 10 West One Hundred and Twenty-second street, now occupied by defendant Malkin, and the premises now known as No. 4 West One Hundred and Twenty-second street, owned and occupied by plaintiff Baumert, and the premises now known as No. 6 West One Hundred and Twenty-second street, owned and occupied by the plaintiffs Bender,

were a part. The deed conveying No. 10 West One Hundred and Twenty-second street to Martin was duly recorded in the office of the register of the county of New York on October 10, 1887, and contained the. following covenant: " It is hereby covenanted and agreed by the said party of the second part for himself, his heirs and assigns that the first buildings to be erected on the said premises shall be first-class private dwellings erected for the use of one family only."

Three other deeds, all dated May 2, 1887, and duly recorded, made by Kilpatrick and his wife, conveyed to Smyth, Wright and Aldhous three other tracts or parcels of land within said block and each contained a covenant on behalf of the respective purchasers for themselves, their heirs and assigns, " that the first buildings to be erected on the said premises, shall be first-class private dwellings erected for the use of one family only."

Through various mesne conveyances, the premises known as No. 10 West One Hundred and Twenty-second street were conveyed to Mary E. Scofield, who conveyed the same to Richard Van Santvoord, by a deed in which it was provided that the property was conveyed subject " to any existing covenants as to private dwellings contained in deed from Walter F. Kilpatrick and wife to William A. Martin, bearing date the second day of May, one thousand eight hundred and eighty-seven, and recorded in the office of the Register of the City and County of New York in Liber 2080 of Conveyances, page 455," being the deed hereinbefore referred to.

Van Santvoord died and left a will by which he devised and bequeathed all his property, real and personal, to his wife, Hattie R. Van Santvoord, who thus became the owner of the premises No. 10 West One Hundred and Twenty-second street, which she has leased for a term of years to the defendant Malkin, who is now using and occupying said premises for business purposes. It is averred:

" That said defendant Van Santvoord leased said premises to said defendant Malkin for said purpose and in defiance of, and contrary to the rights of these plaintiffs.

" That the building now on said premises No. 10 West 122nd Street and now used and occupied by said Malkin, as aforesaid, is the first building to be erected on the said

premises and was designed as and for a first-class private dwelling erected for the use of one family only."

About May 1, 1905, Martin conveyed the premises No. 4 West One Hundred and Twenty-second street to plaintiff Baumert, who ever since has been and still is using and occupying the same as a first-class private dwelling. Through various *mesne* conveyances from Martin, plaintiffs Bender about December 10, 1906, became, and now are, the owners of No. 6 West One Hundred and Twenty-second street, and ever since they have been and still are using the said premises as a first-class private dwelling.

All of the buildings in the block between Lenox and Mt. Morris avenues fronting on West One Hundred and Twenty-second street " are the first buildings to be erected on the said premises and are designed as and for first-class private dwellings erected for the use of one family only, and are now being used and occupied as such, with the exception of the premises No. 10 West 122nd Street now used and occupied by the defendant Malkin and with the exception of two certain first-class churches at the corners of Lenox and Mount Morris Avenues, respectively. * * *

" That the block above mentioned, fronting on West 122nd Street, was designed as and for an exclusive residential district for first-class private dwellings erected for the use of one family only, and plaintiffs purchased the premises on said block now owned by them in reliance upon the foregoing and upon the restrictions and covenants hereinabove set forth."

It is then averred that since Malkin has occupied the premises in question he has used the same for business purposes, as a school for musical instruction, vocal and instrumental, and in the course thereof has disturbed the peace, quiet and comfort of the neighborhood, and has caused disturbing, objectionable, unpleasant and discordant sounds and noises to be emitted of both vocal and instrumental origin, or both combined, destroying the character of the block as a quiet, residential block, devoted exclusively to the purposes of first-class private dwellings and churches. Defendants have had their attention directed to the covenant in question, but they refuse to desist from such use of the premises. Plaintiffs allege such use of the premises by defendants is

now causing, and will cause, irreparable loss and damage to plaintiffs and will change and alter the character of the block in question, and will diminish and impair the use and enjoyment of plaintiffs' premises, for all of which plaintiffs have no adequate remedy at law.

The relief demanded is that: " The defendants may be permanently enjoined and restrained from using and occupying said premises known as No. 10 West 122nd Street, in the Borough of Manhattan, or any part thereof, as a music school, or for any other purpose than that of a first-class private dwelling, and that the plaintiffs have such other and further relief in the premises as may be just and proper, together with the costs of this action, and that the plaintiffs have injunctive relief to the same effect pending the trial of this action."

We thus have a case presented where the covenant by its terms is that the first building to be erected on the premises was to be a first-class private dwelling erected for the use of one family only. The complaint avers that the building now on the premises in question is the first building to be erected thereon and was designed as and for a first-class private dwelling erected for the use of one family only. There is no allegation that the building has been in any way altered or rebuilt by defendants. So that the affirmative duty to build has been discharged. The question is, were defendants under any duty to refrain from using the building for any other purpose than that of a first-class private dwelling?

Upon a prior appeal (178 App. Div. 913) this court reversed an order granting plaintiffs' motion for judgment on the pleadings, and denied their motion on the authority of *Reed* v. *Sobel* (177 App. Div. 532), decided April 13, 1917. It was there held that a covenant without a specification as to time providing that the first buildings to be erected upon lands are to be private dwellings constructed for the use of one family only, is purely a covenant of restriction of construction, and not of use, and where the first building has been erected in good faith for the use of a single family, there is no restriction either of the use of that building or of its substantial alteration, or of the construction of a new building; hence, such a covenant does not prevent the reconstruction of a private dwelling on the premises so as to make it include several

apartments. The covenant there was: "The party of the second part for himself, his heirs and assigns, covenants and agrees that the first buildings to be erected upon said premises are to be private dwellings constructed for the use of one family only." It seems to me that the case at bar comes squarely within the rule laid down in *Reed* v. *Sobel.* In that case *Barnett* v. *Vaughan Institute* (119 N. Y. Supp. 45; 134 App. Div. 921; affd., 197 N. Y. 541) was distinguished, and *Kurtz* v. *Potter* (44 App. Div. 262; affd., 167 N. Y. 586) was cited in support of the conclusion reached.

But it is claimed that *Reed* v. *Sobel* has been overruled by the decision in *Booth* v. *Knipe* (225 N. Y. 390), decided January 28, 1919. In that case the covenant was that the grantee of the property " shall, within two years from the date hereof, cause to be erected and fully completed upon said lot, a first-class building, adapted for and which shall be used only as a private residence for one family." The court called attention in its opinion (at p. 395) to the fact that the covenant had a two-fold aspect: (1) " There is the affirmative duty to build. That duty has been discharged, and we do not need to determine whether it was limited to the first grantee; " (2) " There is the negative duty to refrain from the prohibited use. That duty runs with the land, and charges all who take with knowledge of its terms. * * * The covenant is not merely to build a structure adapted for a given use. The covenant is that the structure, when built, shall be restricted to that use. It ' shall be used only as a private residence,' and a private residence ' for one family.' This is more than a limitation upon construction. It is a restriction of enjoyment." The court held that it would not refuse to enforce the restriction because of its futility, as the owner might tear the first dwelling down and nothing in the covenant would restrict the building to be substituted. It referred to the fact that restrictions upon the form or use of the first building to be constructed are common in conveyances (citing *Kurtz* v. *Potter, supra*), and said that to fix the character of the buildings erected at the beginning might shape the future of a neighborhood, and the court would not refuse to enforce a covenant while it lasted, because it might not last forever.

I am of the opinion that the covenant in question and the accompanying covenants by which the character of the first buildings to be erected upon this block was fixed, are covenants for construction only, affecting only the first building erected upon the property. The case comes within the first category defined in *Booth* v. *Knipe,* and the covenant was fulfilled when the first building erected concededly complied with the terms of the covenant. There was neither an express nor an implied covenant to use the building only as a private dwelling and, therefore, it does not come within the second category.

This case is still governed by the rule laid down in *Reed* v. *Sobel,* which has been in no way affected by the decision in *Booth* v. *Knipe.*

The judgment appealed from will be reversed, with costs to appellants, and judgment for defendants directed in the demurrers, with costs, unless plaintiffs within twenty days serve an amended complaint and pay all of said costs.

SMITH, PAGE and MERRELL, JJ., concurred; CLARKE, P. J., dissented.

CLARKE, P. J. (dissenting):

I dissent. I find that in principle this case is governed by *Booth* v. *Knipe* (225 N. Y. 390). The clear intent of these covenants was to restrict this block to private residential uses. The violation and interference with neighborhood rights are much greater than in the *Knipe* case.

Judgment reversed, with costs, and demurrers sustained, with costs, with leave to plaintiffs to serve amended complaint on payment of costs, and in default thereof, complaint dismissed, with costs.