FRANK J. BAUMERT et al., Appellants, *v.* MANFRED
MALKIN, Conducting Business under the Trade Name
of THE MALKIN MUSIC SCHOOL, et al., Respondents.

**Real property — deeds — covenants in conveyance restrict-
ing the construction and use of buildings thereon to first-class
private buildings designed for the use of one family only —
when such restrictions reasonable and enforcible — action to
restrain use of such buildings for a music school — erroneous
dismissal of complaint on ground that it does not state a cause
of action.**

1. Where in a contract, duly recorded, between the owner of land
in the city of New York and a prospective purchaser, the agreement
to be binding upon the heirs and assigns of both parties, the parties
agreed that that portion of the block still owned by the vendor " shall
be and hereby is restricted so that the first buildings to be erected
thereon shall be first-class private dwellings designed for the use of
one family only," which agreement is expressed upon the part of one
or more grantees through whom the defendant, the present owner,
derives title, by a covenant " for himself, his heirs and assigns that the
first buildings to be erected on said premises shall be first-class private
dwellings erected for the use of one family only," it must be held that
the exaction of said agreement and covenant survived mere erection
and fairly required that the buildings should be private dwellings
in reality as well as in mere form and that the " use " for which they
were to be erected should be the one to which they should be devoted.
The language seems not only fairly but conclusively to mean that when
a person is required to erect a building of a certain character and for a
certain use, that that character and that use are the ones which must
be imposed upon it when the erection is completed.

2. Where defendant, the owner of a lot on which there was erected
a " private dwelling " under and subject to the restrictions of said
agreement and covenant contained in the conveyances constituting
her chain of title to the premises, has rented the building to a
co-defendant who is using it for the purpose of conducting a music
school for the purpose of teaching music and giving musical entertain-
ments, all of which, it is alleged, result in disturbing the " peace,
quiet and comfort " of the neighborhood through the commission
of " disturbing, objectionable and discordant sounds and noises
arising from vocal and instrumental practice and tuition " and by con-

certs causing "great throngs of people to gather in and approach said premises" and plaintiffs who own premises adjoining defendant's property, also subject to the same restrictive covenant, brought this action demanding judgment that the defendants be permanently enjoined and restrained from using and occupying said premises, or any part thereof, for a music school, or for any other purpose than that of a first-class private dwelling, it was error to dismiss the complaint and sustain defendant's demurrer thereto, upon the ground that the complaint fails to state a cause of action. (*Kurtz* v. *Potter*, 44 App. Div. 262, questioned.)

*Baumert* v. *Malkin*, 201 App. Div. 849, reversed.

(Argued January 8, 1923; decided February 27, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 12, 1922, unanimously affirming a judgment in favor of defendants entered upon a prior order of said Appellate Division which reversed an interlocutory judgment of Special Term overruling demurrers to the complaint, sustained said demurrers and directed judgment dismissing the complaint. (See 189 App. Div. 858.)

*Charles Adkins Baker* and *Herman Aaron* for appellants. The covenant in question relates to the use and is not satisfied by construction merely. (*Barnett* v. *Vaughan Inst.*, 119 N. Y. Supp. 45; 134 App. Div. 921; 197 N. Y. 541; *Levy* v. *Schreyer*, 177 N. Y. 293; *Goodhue* v. *Pennell*, 164 App. Div. 821; *Booth* v. *Knipe*, 225 N. Y. 390; *Cromwell* v. *American Bible Society*, 202 App. Div. 625.)

*Taylor More* for respondents. The covenant here, being restrictive, should be strictly construed against the plaintiffs. If there be uncertainty or ambiguity as to the meaning of the words used, these defendants must have the benefit of the doubt. Such covenants cannot be extended by implication. (*Blackman* v. *Striker*, 142 N. Y. 555; *Kitching* v. *Brown*, 180 N. Y. 427; *Mitchell* v.

*Reid,* 192 N. Y. 263; *Reformed P. D. Church* v. *M. A. Bldg. Co.,* 214 N. Y. 274.) The complaint itself shows the alleged restriction was fully complied with. (*Kurtz* v. *Potter,* 44 App. Div. 262; 167 N. Y. 586; *Hurley* v. *Brown,* 44 App. Div. 480; *Reed* v. *Sobel,* 177 App. Div. 532; *Reformed P. D. Church* v. *M. A. Bldg. Co.,* 214 N. Y. 268; *Booth* v. *Knipe,* 225 N. Y. 390.) The restriction in question does not cover, control or govern the use or mode of occupancy of the premises in question. (*Kurtz* v. *Potter,* 44 App. Div. 262; 167 N. Y. 586; *Hurley* v. *Brown,* 44 App. Div. 483; 54 App. Div. 619; *Lewis* v. *Ely,* 100 App. Div. 252; *Gallon* v. *Hussan,* 172 App. Div. 393; *Smith* v. *Graham,* 161 App. Div. 809; *Sonn* v. *Heilbert,* 38 App. Div. 515; *Duryea* v. *Mayor, etc.,* 62 N. Y. 592; *Reformed P. D. Church* v. *M. A. Bldg. Co.,* 214 N. Y. 268; *Hutchinson* v. *Ulrich,* 145 Ill. 336; *Door* v. *Harrahan,* 101 Mass. 531; *Stone* v. *Pillsbury,* 167 Mass. 332.)

HISCOCK, Ch. J. This appeal from a final judgment dismissing plaintiff's complaint brings up for review an interlocutory judgment sustaining defendants' demurrer to that pleading. The question presented is the one whether the complaint states a cause of action and this general question is narrowed to the further one involving the meaning of what, with sufficient accuracy, may be termed a restrictive covenant applicable to lands owned or occupied by the defendants.

It appears from the complaint that in 1887 the owners of an entire block of land in the upper part of New York being about to sell portions thereof made a contract with the proposed purchasers imposing certain burdens and restrictions upon the uses to which said lands should be devoted. This contract which was properly recorded amongst other things provided as follows:

" Whereas it is the intention of all the parties hereto that the entire block is to be restricted so that the first

buildings to be erected on said block shall be first class private dwellings designed for the use of one family only, * * *

" Now, therefore, this agreement

" Witnesseth

" That * * * it is agreed by and between the parties hereto that that portion of the block still owned by said parties of the first part (the vendors) shall be and hereby is restricted so that the buildings to be erected thereon shall be first class private dwellings designed for the use of one family only, or a first class church or churches.

" And the said parties of the second part hereby agree that they will commence the improvement of the lots severally bought by them within six months from the date hereof and continue the same with due diligence to completion.

" This agreement is to be held binding upon the heirs and assigns of the respective parties hereto."

Under a chain of conveyances and the will of her husband the defendant Van Santvoord has become the owner of that portion of the premises concededly bound by the above agreement, which is known as No. 10 West One Hundred and Twenty-second street. In her chain of title the restrictive agreement above referred to is expressed by a covenant upon the part of one or more grantees through whom she derives title " for himself, his heirs and assigns that the first buildings to be erected on said premises shall be first class private dwellings erected for the use of one family only."

In accordance with said agreement and covenant there was erected and is still standing on said premises a structure, " the first building," which complies with the covenant to the extent that it is in form a first-class private dwelling and designed for the use of one family only. Said defendant, however, has rented said premises to her co-defendant Malkin, who, under the title " The

Malkin Music School " is using the building for the purpose of conducting the business of teaching music and who, in connection therewith gives various forms of entertainment and all of which, it is alleged, result in disturbing the " peace, quiet and comfort " of the neighborhood through the commission of " disturbing, objectionable and discordant sounds and noises arising from vocal and instrumental practice and tuition " and the concerts " have caused great throngs of people to gather in and approach said premises."

The plaintiffs subject to the restrictive agreement and covenant set forth above are the owners of two lots adjoining the defendants' premises which are used for private residences and they allege that their enjoyment of their property is greatly affected and impaired by the use being made by the defendants of their premises and which is not only contrary to the restrictive covenant above mentioned but is the only exception to the use otherwise being made of lands in the neighborhood for private residential purposes. Having protested against such employment of their premises by the defendants without avail the relief is demanded that the latter be enjoined from such use on the ground that it is a violation of the restrictions covering the same and of the rights of plaintiffs.

The " first building " having been erected on defendants' premises, we are not concerned with the burdens in that respect imposed upon grantees. We are only concerned with the nature and extent of the restrictive provision binding defendants respecting the use of that building and to the benefit of which plaintiffs are indisputably entitled. This being so the complaint which has been summarized clearly enough foreshadows what the dispute is between the parties concerning the meaning and effect of such restriction. Plaintiffs insist that the meaning is that the first buildings to be erected shall not only be private dwellings in form and structure but that they

shall be actually used as such. The defendants on the other hand contend that their duty affirmative and negative has been fulfilled when a building of the prescribed character has once been erected and that the use to which it shall be thereafter put is entirely subject to the will of the owner. The dispute is a narrow one involving the meaning of a few words and does not require long discussion. The defendants are entirely correct in asserting that we approach its consideration controlled by the general principle that restrictive covenants are to be construed strictly against those who formulate and impose them and that plaintiffs carry the burden of demonstrating that their version of the present covenant is sustained by a plain and natural interpretation of its language. Not forgetting at all these general rules we nevertheless have reached the conclusion that plaintiffs' claim successfully carries the burden which is imposed upon it and that their interpretation of the covenant in question survives the tests by which it must be judged.

Of course the parties who made the agreement covering these lands and caused to be inserted in their deeds the restriction which has been quoted had some object in doing so. We cannot assume that their pains were taken as mere idle pastime. It is equally true that the only purpose which they could have had in mind was that of giving a residential character to the tract in question. If they had no concern about the future uses to be imposed upon the land it was unnecessary to say anything. If they desired to promote business uses they would have employed an entirely different form of covenant. Thus an intelligent character can only be given to their conduct when we assume that they desired to preserve for their lands a residential character and that their agreement and covenants were designed for the accomplishment of this purpose. We are not only entitled but are required to take into account these considerations in interpreting the language which was

used.   Doing this we find that the wording in the agreement and in the covenant of the deeds is practically the same.   In the former it is provided that the buildings to be erected " shall be first class private dwellings designed for the use of one family only; " in the covenant " that the first buildings to be erected on said premises shall be first class private dwellings erected for the use of one family only."

If we should accept defendants' contention that the fair and reasonable meaning of these clauses is that the first building to be erected on the lot shall be given the form, structure and appearance of a private dwelling, but then may be used for any purpose whatever to which it can be adjusted, certainly the purposes of the vendors have failed of fulfillment and their efforts have resulted in mere idle gestures which point and lead to no practical results.   The words that the building shall be a first-class private dwelling erected for the use of one family only, are necessarily quite general and if applicable only to the structure of the building would permit it to be utilized for a wide variety of businesses.   Nobody at all familiar with the range of business purposes to which buildings constructed for private one-family residences are now being devoted in New York city need have any doubt that under this interpretation the whole tract might be stripped of a residential character and turned over to business purposes.   We are not able to escape the conclusion that under the application of rules of common sense which ought to have some place in interpreting such a covenant as this, the construction urged by defendants, which might result in utter defeat of the only purpose attributable to it, is narrow and untenable and does not embody the reasonable meaning of the language used.   When the parties said that the buildings to be erected " *shall be* first class private dwellings erected *for the use* of one family only " the exaction survived mere erection and fairly required that they should be

private dwellings in reality as well as in mere form and that the " use " for which they were to be erected should be the one to which they should be devoted. The character implied by the words " shall be " was a continuing one. It seems to us quite unreasonable to say that the words that a building to be erected on a lot " shall be " a private dwelling refer only to construction and not to use and that as soon as erected it may be turned into a manufacturing establishment, or to say that it must be erected as a " private dwelling " for " use of one family," but that as soon as thus erected it may be used for a store. The language seems to us not only fairly but quite conclusively to mean that when a person is required to erect a building of a certain character and for a certain use that that character and that use are the ones which must be imposed upon it when the erection is completed.

There are no controlling authorities which embarrass us by beckoning us to some other construction. Many of the cases cited by defendants involve restrictive clauses which so plainly differ from the present one that discussion of them is unnecessary. We shall refer in detail to only two which seem to be especially relied on.

The authority of *Kurtz* v. *Potter* (44 App. Div. 262) is especially invoked on the theory that this court (167 N. Y. 586) affirmed what was said by Mr. Justice INGRAHAM at the Appellate Division to the effect that a covenant providing that buildings to be erected on premises should be private dwellings adapted for the residence of private families, was not violated by devoting such buildings after erection to some other purpose. Of course if this court by its affirmance had ratified this view the decision would be a very influential if not controlling authority for defendants. The fact, however, is that what was said by Mr. Justice INGRAHAM on this point was after a conclusion had been reached deciding the case upon an entirely different ground and the

affirmance by this court did not in any manner purport to affirm what was so said.

In *Reed* v. *Soble* (177 App. Div. 532) it was held that a covenant providing that the first buildings to be erected upon lands should be private dwellings constructed for the use of one family only, was purely a covenant affecting construction and not use. This view, however, as appears from the opinion was greatly if not wholly induced by the thought that a restrictive covenant applicable only to the first building to be erected on the lot ought to be thus limited and should not be interpreted as applicable to the use of the building. In the case of *Booth* v. *Knipe* (225 N. Y. 390) this court, however, disagreed with this view and we held that we would not refuse to enforce a first building restrictive covenant against an unauthorized use of said building simply because the restriction might be avoided by tearing down the building; that so long as conditions existed which justified the application of such a covenant we would uphold it and would not anticipate futility of the covenant through possible future action of the violator by denying present enforcement.

On the other hand we think that the views which we have expressed are entirely in accordance with prior decisions of this court. In *Barnett* v. *Vaughan Institute* (119 N. Y. Supp. 45; affd., 134 App. Div. 921; 197 N. Y. 541) the court had to consider a covenant that buildings to be erected upon the premises in question should " be first class private houses " and the covenant instead of being limited to " first buildings " was limited by a fixed date several years in the future. The defendant in that case after a purchase of two or more buildings covered by and constructed in accordance with the covenant proceeded to turn them into a sanitarium and when it was sought to enjoin this use it was in substance argued just as it is in this case that if a building was in form of construction a private house the restriction was satisfied and that the use of the building was in no way limited.

The courts, however, unanimously rejected this view, holding that when a covenant required that a building should be a private house it applied to use as well as construction and was not satisfied by erection of a building which in form complied with the covenant but in use utterly violated it. It seems to us that the covenant in the present case is even stronger against defendants than was the one in the case cited.

In *Levy* v. *Schreyer* (177 N. Y. 293) this court had before it a covenant which forbade the erection of a tenement house and provided that no houses should be erected except private dwellings, the outward appearance of which was quite carefully prescribed. The building erected complied with all of these requirements so far as they related to outside structure and appearance but the interior of the building was so arranged that it could be used for what were regarded as tenement house purposes. It was held that the covenant was not satisfied by the general structure and outward appearance of the building but would be so construed as to regulate, in accordance with its provisions, the interior use of the building.

While other decisions doubtless might be found without if not within this jurisdiction to a similar effect, we do not regard further citations necessary. The meaning of the clause in our opinion so plainly appears on its face that extensive citation seems unnecessary.

Judgments dismissing complaint and interlocutory judgment sustaining defendants' demurrers should be reversed and demurrers overruled, with costs in all courts, and with leave to defendants to withdraw demurrers and plead over, within twenty days, on payment of costs.

HOGAN, CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.